## Case No. 6,258.

### HAYDEN et al. v. The C. W. COCHRANE.

[3 Woods, 304.] [1]

Circuit Court, E. D. Texas.    May Term, 1879.

SALVAGE—BASIS OF AWARD.

1. Where a bark laden with cotton, and anchored outside the bar, took fire, and as the only means of saving ship and cargo she was towed by salvors into shallow water and filled and sunk, and her hull and cargo were afterwards sold in that condition: Held, that the sum which they brought at the sale was the measure of the salved property, and that salvage should be allowed on that basis.

2. The amount allowed in the case to the salvors stated.

[Appeal from the district court of the United States for the Eastern district of Texas.

[This was a libel by John H. Hayden and others against the bark C. W. Cochrane and cargo.] On January 9, 1879, the bark C. W. Cochrane was lying off the bar at Galveston, in about six fathoms and a half of water, engaged in taking in a cargo of cotton from lighters. The bark was worth $70,000, and had taken aboard 2,600 bales of cotton, worth $104,000. About one o'clock p. m., of the day just mentioned, the cotton stowed in the lower forward hold was discovered to be on fire, in a part of the ship which was inaccessible. The master was absent, but the first officer who was in charge of the vessel, closed all vents so as to keep down the fire, and set signals of distress. When the fire was first discovered, the first officer had with him six men of the crew and five stevedores who had been engaged in stowing the cargo. Several steam tugs and lighters answered the signal, and came to the assistance of the bark. These were steam-tugs Buckthorn, Joy, and the steam-lighter Ella Knight. They all tried to subdue the fire by pumping water into the hold of the bark. About 10 p. m. the master of the bark arrived. On consultation, the master decided that the only way to save the bark and cargo from total loss was to tow her into 20-feet water and fill her. This was done. The lighter Ella Knight and the tug Joy towed the bark shorewards to a place where there was about 20 feet of water and a mud bottom, where she was anchored. The steam-tugs and the steam-lighter Ella Knight resumed the work of pumping water into the hold of the bark.

On the morning of January 10, the day after the bark had been anchored as aforesaid, the weather became unfavorable, the wind sprung up from the southeast, causing a heavy sea, which grew worse all day and the following night, rendering it extremely hazardous for the vessels to lie alongside the bark on account of the rolling and pitching of the craft, and their concussion with each other. Another source of danger to the vessel and the men employed about the bark,

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

arose from the fact that the fire inside the bark might at any time burn off the masts below decks, and they were liable to be dislodged by the pitching and rolling of the bark, and to fall on the vessels alongside, in which case the vessel struck would have been sunk or badly damaged. About 1 o'clock a. m., of January 10, the master of the bark left her and came to Galveston to get further assistance. On arriving, he requested Captain Guthrie to remain on board the bark and give the mate, Davis, such advice and assistance as he could, and he remained and acted accordingly. At 2 o'clock p. m., of January 10, the weather was so rough that the smaller boats, Joy and Index, were compelled to draw off, and at 4:30 p. m., the Maddox was compelled to do likewise. The Ella Knight remained until 6 p. m., when she too cast off, first taking on board the master and crew of the bark and the stevedores. At the request of the master of the bark, she came to anchor a short distance from the bark, and remained there all night with steam up, with the purpose to render further assistance in case opportunity should offer, but the wind did not abate till morning. When the Ella Knight left the bark on the evening of the 10th instant, she was resting on the bottom with 16 feet of water in her hold. All the steamers and men engaged in the attempt to rescue the bark and her cargo, worked under the direction of the bark's officers, and at their request, and did all that was possible to be done to accomplish their purpose. The bark's crew and the stevedores worked on board the bark, stripping her of her rigging and other property and passing them on board the Ella Knight. Fifteen bales of cotton were transferred in this manner.

On January 12, the steamer Star went to the wreck, which was still burning, and put out the fire which was confined to the hull above the water line. The bark had filled with water. The services rendered the bark resulted in placing her where she could be wrecked and her cargo taken out, and this was all that it was possible to accomplish. If she had burned and sunk where she took fire, she would have been a total loss. The Ella Knight, in performing the service stated, had one of her guards split, to repair which would cost from $100 to $200. The value of the Ella Knight's service in her ordinary business at that time was $350 per day. A number of stevedores, who had been engaged in stowing the cargo of the bark, assisted in getting out about sixty bales of cotton and in stripping the bark of her rigging and passing the cotton and rigging over to the Ella Knight, whereby they were saved. The hull of the bark as she lay submerged, and the cotton in her hold, and the tackle, rigging, boats and cotton saved from the bark were all sold by order of the district court. After paying costs, there was paid of the proceeds of these sales, into the registry of the court,

the sum of $15,596.08. The claims of all salvors have been adjusted, except the demand of the Ella Knight, the pilot, Captain Guthrie and the stevedores above mentioned.

Robert G. Street, George Flournoy, and J. Z. H. Scott, for libelants and interveners.

T. N. Waul and H. C. Pratt, for claimants.

WOODS, Circuit Judge. I think it is clear that the service rendered by the Knight, by Guthrie and by the stevedores above mentioned, was a salvage service. When a ship or its lading is saved from an impending peril by the service of any person who is under no obligation to render the service, it is a salvage service. The peril of the property saved, the hazardous nature of the service, are considerations which go to the amount of the salvage. In this case, the value of the property salved is measured by the amount paid into the registry of the court, the proceeds of its sale. The cotton and the tackle, boats, etc., taken from the bark and brought into the city are, of course, salved property. According to the agreed facts, had it not been for the services of the libelants and others, the bark and her entire cargo would have proved a total loss. Through the exertions of the salvors the bark and her cargo remaining on board, was placed in such a position that it brought at public sale $14,275. The fact that it was submerged does not make it any the less a fact that it was saved. By the efforts of the salvors it was rescued from the peril which threatened it, and brought to a position of safety. The proceeds of its sale show what was saved, and upon that amount the salvage should be allowed. The salvage service was faithfully rendered, and was attended with some, though not a high degree of danger. After some consideration, I think that the following allowance of salvage should be made:

To the Ella Knight and crew........ $1,500
To Captain Guthrie................... 100
To each of the stevedores mentioned in
   the agreed facts.................... 20

And it is decreed accordingly.